**Melvin GREEN, Petitioner,**

v.

**WEBBCRAFT COMPANY, Mid–Continent Casualty Company and The Workers' Compensation Court, Respondents.**

**No. 70852.**

Court of Appeals of Oklahoma, Division 4.

Aug. 1, 1989.

Rehearing Denied Sept. 5, 1989.

Certiorari Denied Jan. 23, 1990.

Richard A. Bell, Norman, for petitioner.

Bertha M. Dodson, Tulsa, for respondents.

BRIGHTMIRE, Vice Chief Judge.

Does competent evidence support the trial court's finding that the claimant did not sustain an accidental injury during the

course of his employment with the respondent employer? We hold that it does not and vacate the complained-of order.

## I

The forty-eight-year-old claimant, Melvin Green, filed his Form 3–b June 3, 1987, alleging "[r]educed breathing capacity" and injury to his "[l]ungs and upper respiratory system" as a result of "[c]ontinuous exposure for 12 years to painting, fiberglass, resin [and] fumes" while working for the respondent, Webbcraft Company, the Collinsville-based manufacturer of Webbcraft boats. The date of last exposure was "[o]n or about February 23, 1987." The employer admitted employment up to February 11, 1987, but denied injury or notice of one.

The matter was heard April 6, 1988, at which time the claimant testified and both parties presented the narrative reports of medical experts which were presented for admission without objection to their competency. The claimant's expert found a "partial permanent impairment of 25% to the body as a whole secondary to Class 2 respiratory impairment and damage to his lungs" in addition to a "partial permanent impairment of 10% secondary to obstruction in the upper respiratory system ... caused or aggravated by his employment."

The employer's expert, on the other hand, concluded that the claimant "has not suffered any permanent partial impairment of function to the respiratory system or to the person as a whole as a result of his employment with Webb Craft" and "any and all complaints should be attributed to his use of cigarettes and tobacco products."

In its April 14, 1988, order the trial court found that the claimant "did not sustain an accidental personal injury arising out of and in the course of claimant's employment" and denied his claim. The claimant seeks review of the order.

## II

The claimant first contends that "[t]here was no evidence in the record probative of non-injurious exposure." The argument supporting this conclusion is that there is undisputed evidence of the claimant's exposure for several years to job-environment air consisting of "hard vapors, fumes, and fiberglass ... and paint fumes ... in a paint booth," and "dust in the air ... from grinding, resin, odors, catalysts ..." and that he has "shortness of breath ... can't lay down to sleep at night," and adds, "I can't breathe." This evidence, says the claimant, brings him squarely within the statutory definition of *injurious exposure*—a fact to be distinguished from the quantum of resulting damage—implicit in the language of 85 O.S.Supp.1988 § 11(4).[1]

There is some merit to this contention. The medical experts of both parties accepted the undisputed history in this case. The employer's medical expert ultimately concluded, not that the claimant had not been exposed to injurious airborne substances at work or that he had not suffered any injury from injurious exposure, but only that claimant "has not suffered any permanent partial impairment of function to the respiratory system or to the person as a whole as a result of his employment with Webb Craft." He further opined that whatever "complaints" claimant had were due to the use of "cigarettes and tobacco products." And along this same line the physician stated that "any period of temporary total disability has ended." These statements suggest the physician assumed that the claimant may have sustained some injury to his lungs due to the use of tobacco while inhaling the toxic air at Webbcraft, but suffered no consequent impairment. Thus since there is no evidence contradictive of job-related "injurious exposure" and no evidence that the claimant did not sustain some de-

---

1. This statute reads in pertinent part as follows:
   "Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable...."
   While the statute may not be definitive, it does project the idea that the required exposure must be capable of causing injury.

gree of injury as a result of many years of injurious exposure, there exists no evidentiary foundation for the trial court's finding that the claimant sustained no accidental injury.

The Workers' Compensation Act clearly makes a distinction between "accidental injury," "impairment" and "disability."[2] A worker can, of course, suffer a job-related injury, say to his lungs, either as a result of an accidental inhalation of a toxic substance, or as a result of a long-term disease process, yet sustain no discernable impairment and therefore no compensable disability within the meaning of the Act.

Since the employer's evidence, medical or otherwise, did not respond to or contradict the claimant's historical or medical evidence relating to the issue of injury, it was—as to such issue—without probative value, and the court was obliged to find that the worker did sustain an accidental injury during the course of his employment. The employer did, however, contest the claimant's contention that he had some *Guides*-authorized impairment resulting from the injury to his lungs and upper respiratory system giving rise to an issue not yet resolved.

Given the state of the record before us, we hold it was error for the court to find that the claimant had not sustained any injury to his lungs or upper respiratory tract—an error that requires the order to be vacated.

### III

■ The claimant next alleges that "[t]he order of the trial court is not based on competent medical evidence." This conclusion is premised on several alleged irregularities in the employer's medical evidence.

What we have heretofore decided renders it unnecessary to consider this specific assignment of error. We do note in passing, however, that no objection to the competency of the employer's medical evidence was made at trial and therefore such an attack is not available in post-trial proceedings. *Whitener v. South Central Solid Waste Authority,* 773 P.2d 1248 (Okl.1989).

### IV

The order of April 14, 1988, is vacated and the cause is remanded with directions to find that the claimant did sustain an accidental job-related injury and, based on the evidence concerning resulting impairment, to determine the extent of any compensable disability the claimant may have sustained, and to otherwise proceed according to law.

REIF, J., concurs.

STUBBLEFIELD, J., dissents.

---

**2.** These definitions are found in 85 O.S.Supp. 1988 § 3. They read in part as follows:

"(7) 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined."

. . . .

"(10) 'Occupational disease' means only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease."

"(11) 'Permanent impairment' means any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made...."

"(12) 'Permanent total disability' means incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee is or becomes physically suited and reasonably fitted by education, training or experience; loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall constitute permanent total disability."

"(13) 'Permanent partial disability' means permanent disability which is less than total and shall be equal to or the same as permanent impairment."