Peggy Jo COLLINS, Petitioner,

v.

HALLIBURTON SERVICES, Own Risk and The Workers' Compensation Court, Respondents.

No. 71474.

Supreme Court of Oklahoma.

Oct. 30, 1990.

Rehearimg Denied Feb. 12, 1991.

Richard A. Bell, Norman, for petitioner.

John A. McCaleb, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for respondent, Halliburton Services.

SIMMS, Justice.

Original proceedings to review the order of the Workers' Compensation Court holding that Peggy Jo Collins, petitioner, did not acquire lung or upper respiratory disease as the result of an on-the-job injury. The resolution of this case hinges on one issue: whether the decision of the trial court is supported by competent evidence. *Parks v. Norman Municipal Hospital,* Okl., 684 P.2d 548, 552 (1984). Upon review, the Court of Appeals, relying on *Labarge v. Zebco,* Okl., 769 P.2d 125, 128 (1988), found no competent evidence to sup-

port the holding of the trial court. Because we find competent evidence to support the trial court's decision, we vacate the opinion of the Court of Appeals and affirm the ruling of the trial court. A summary of the facts, as disputed, follows.

Collins began operating a turret lathe for Halliburton Services (Halliburton), respondent, in February of 1973. Her employment as a machinist for Halliburton continued until March 21, 1984 when a back injury and a heart condition allegedly forced her to stop working. This action was originally filed March 25, 1986. Claimant testified that while at her work station she was exposed to various chemicals and fumes including smoke produced by the lathe, machine coolant, propane exhaust, cigarette smoke, and oil. She stated and one physician agreed that she acquired a lung or upper respiratory condition as a result of this long-term exposure to these chemicals and fumes. She stated that she suffered from shortness of breath and would lose her breath after climbing one flight of stairs or walking one-half block. Although she claimed the condition developed in 1973 or 1974, she also admitted to acquiring the flu or a "bronchial thing" at that time. She further testified that a doctor prescribed medication for the bronchial condition which she continued taking until August of 1985. Collins never mentioned any breathing problems to her supervisors who testified that they did not notice any problems with breathing.

A year-and-a-half after Collins left Halliburton, an industrial hygienist performed air quality tests at the facility where she had worked. He determined from these tests that the fumes and smoke present were well within the OSHA limits and rendered an expert opinion that the facility was safe for workers. The trial court admitted these test results and conclusions, but refused to consider a medical report offered by Halliburton because the report did not comply with the AMA Guides to the Evaluation of Permanent Impairment pursuant to Workers' Compensation Rule 20. The trial court, however, did admit medical records indicating that Collins had visited

an asthma specialist and had been a "known adult onset asthmatic" for twenty years. These records further showed that Collins had been taking medication for the asthma for many years. Collins denied having had asthma. Although the only medical report which was admitted concerning Collins' permanent impairment showed thirty-five percent impairment to the body, the trial court denied the claim, specifically finding that the impairment was not the result of a work-related injury.

■ The Court of Appeals reversed the trial court, finding the medical report submitted by Collins' doctor to be the only competent medical testimony on causation. The court concluded that since no other competent evidence on causation was presented, the trial court erred in its decision which was contrary to the admissible report. We disagree.

The trial court was obliged to consider all the admissible evidence presented in determining the issue of causation. This evidence included the medical records indicating Collins had suffered from asthma for some time before being exposed to chemicals and fumes at Halliburton. The trial court was also obliged to consider the expert testimony of the industrial hygienist concerning the environment of the Halliburton workplace, even though the testing occurred long after Collins had left Halliburton's employ. This evidence was to be given whatever weight the trial court felt it deserved.

It is axiomatic that the burden of proof in workers' compensation cases rests on the claimant seeking benefits to establish by competent evidence that the injury suffered was received as the result of an accident arising out of and in the course of his employment. *Armco, Inc. v. Holcomb*, Okl., 694 P.2d 937 (1985); *Jake's Casing Crews, Inc. v. Grant*, Okl., 451 P.2d 700 (1969). Title 85, O.S.1981, Section 17 provides, in pertinent part, as follows:

"A. The determination of disability shall be the responsibility of the [Workers' Compensation] Court. Any claim submitted by an employee for compensation for permanent disability must be supported by competent medical testimony which shall include an evaluation by a physician stating his opinion of the employee's percentage of permanent impairment and whether or not the impairment is job-related and caused by the accidental injury or occupational disease."

Nowhere in this provision is the respondent/employer of a workers' compensation case obligated to present medical evidence proving the nonexistence of a compensable injury or disease. Nor does the statute require the respondent/employer to present medical evidence that the injury or disease was **not** job-related, i.e. caused by some condition at the work place.

■ Our holding in *Labarge v. Zebco*, Okl., 769 P.2d 125 (1988), only requires the issue of **permanent disability** to be proven or refuted by medical expert testimony. The issue decided by the trial court in the instant case concerned **causation**. This Court has never held medical testimony is essential for refuting causation. Rather, in *Special Indemnity Fund v. Stockton*, Okl., 653 P.2d 194, 199 (1982), we held that "[w]here the disability is of a character to require expert professional testimony to determine the cause and extent, the question is one of science and must be proved by expert testimony, the absence of which renders the evidence insufficient to **sustain an award**." (Emphasis added) This language was recently quoted in *Gaines v. Sun Refinery and Marketing*, Okl., 790 P.2d 1073 (1990) and speaks only to the sufficiency of evidence where a trial court has awarded compensation.

■ Section 17 requires only the employee's claim requesting compensation for permanent disability be supported by competent medical testimony. It requires claimants to prove compensable injury or disease and that the injury or disease is job-related, by competent medical evidence. Thus, both statutory provisions and case law require only the **claimant** to present medical evidence showing that an injury or disease was job-related. The absence of this expert medical testimony proving that an impairment was caused by an accidental injury or occupational disease defeats an

award for a claimant. Where respondent produces any admissible evidence which refutes the claimant's medical testimony concerning causation, the trial court must consider all the evidence in determining causation of the injury or disease. Both parties are permitted to present lay evidence, whether direct or circumstantial, on the issue of causation. *Wilson Foods Corp. v. Porter*, Okl., 612 P.2d 261, 265 (1980). Section 17 distinguishes the two parties in that a claimant **must** present expert medical testimony supporting his claim that he is impaired a certain percentage and that the impairment is job-related, i.e. caused by an accidental injury or occupational disease which occurred in the scope of and course of the claimant's employment.

In light of the above discussion, we find that the record as a whole contains competent evidence to support the decision of the trial court.

Accordingly, the order of the Workers' Compensation Court is SUSTAINED.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.

WILSON, KAUGER and SUMMERS, JJ., concur in part, dissent in part.