REEVES & CO. V. T. V. BROWN.

No. 15,872.

SYLLABUS BY THE COURT.

1. EVIDENCE — *Cross-examination of Witnesses — New Matter.* Except as to matters affecting his credibility, the cross-examination of a witness should be confined to the subjects on which he testified on direct examination. If a party desires to examine the witness on new and independent matters he should make the witness his own.

2. CHATTEL MORTGAGES — *Description of Property — Notice — Identification of Property.* A mortgage, in which the property was described as "two-thirds (⅔) of ninety (90) acres of growing wheat, all this wheat on Mrs. Tea's farm, one mile south and one mile west of city of Kiowa; on farm which is northeast quarter (¼) of section No. 17, township No. 29, range No. 12, Woods county, Oklahoma. This instrument covers wheat in field, shock, stack, wagon, granary or wherever found, which said above-described property, at the date of these presents, is in possession of said parties of the first part," etc., is not invalid on its face for indefiniteness of description; and after a witness had testified in a trial to enforce such a mortgage that the mortgagor had more than ninety acres of wheat on the farm described, and the correctness of the other parts of the description was unquestioned, the question whether third parties, under the description given and by reasonable inquiries suggested by the instrument, could identify the property intended to be mortgaged was for the determination of the jury.

Error from Barber district court; PRESTON B. GILLETT, judge. Opinion filed June 5, 1909. Reversed.

*E. C. Wilcox,* for the plaintiff in error.

*A. L. Noble,* and *J. N. Tincher,* for the defendant in erorr.

The opinion of the court was delivered by

JOHNSTON, C. J.: Involved in this proceeding is the correctness of a ruling taking from the jury the question whether a chattel mortgage on a growing crop of wheat was valid and effective. It appears that L. E.

Roberts rented from Mrs. L. Tea her farm in Oklahoma for the term commencing April 1, 1904, and ending September 1, 1905. One of the stipulations of the lease was that if the weather conditions were right Roberts should break up eighty-five acres of sod, and in any event should put in wheat all the broken ground on the place in the fall of 1904, giving the landowner a rental of one-third of the crop. Roberts put out the wheat crop, and later, on November 30, 1904, executed a mortgage on his share of the wheat. The crop matured, and when it was thrashed Ray Tea, the son of the landowner, sold the whole crop (including the share mortgaged) to T. V. Brown, who placed it in his elevator and mixed it with other wheat. When the mortgagee demanded the wheat Brown refused it, saying that the mortgage was not recorded in his county in Kansas and that he did not know that the wheat was mortgaged. In this action, brought for the conversion of the wheat, Reeves & Co. showed that the mortgage was executed in accordance with the laws of Oklahoma and was duly recorded in the county where the wheat was grown. The court, however, sustained a demurrer to plaintiff's evidence, on the sole ground that in the light of the evidence the description of the wheat in the mortgage was so indefinite that it could not be identified, and judgment was therefore given for the defendant, Brown. In the mortgage the property was described as follows:

"Two-thirds (⅔) of ninety (90) acres of growing wheat, all this wheat on Mrs. Tea's farm, one mile south and one mile west of city of Kiowa; on farm which is northeast quarter (¼) of section No. 17, township No. 29, range No. 12, Woods county, Oklahoma. This instrument covers wheat in field, shock, stack, wagon, granary or wherever found, which said above-described property, at the date of these presents, is in possession of said parties of the first part."

As will be observed, the mortgage on its face is a valid instrument. One containing a similar descrip-

tion of a growing crop was challenged for indefiniteness and held to be sufficient. (*Muse, Spivey & Co. v. Lehman*, 30 Kan. 514.) It is contended that the testimony in this case develops such uncertainty in the description as to make the mortgage invalid. If the testimony relied on for that purpose was admissible at all, its weight and effect were questions of fact for the determination of the jury. The plaintiff, it would seem, has good reason to complain of the admission of the testimony which it is said destroyed the validity of the mortgage. Tea, who sold the mortgaged wheat and held an adversary position toward the mortgagee, was called as a witness for plaintiff and was asked in relation to the sale and delivery of the wheat to the defendant. On cross-examination, and over objection, the defendant was permitted to ask the witness how many acres of wheat there were on the Tea farm that year. His answers, although indefinite, were to the effect that Roberts had more than one hundred acres of wheat on the place. This testimony was not responsive to the testimony in chief, and the defendant was in this way permitted to make his defense that there were more than ninety acres of wheat on the place and therefore the mortgaged wheat was not separable from the other and could not be definitely ascertained. Except as to matters affecting credibility, the cross-examination should be confined to the subjects directly testified to by the witness. If a party desires to examine a witness on new and independent matters he must make the witness his own. (*Sumner v. Blair*, 9 Kan. 521; *Pratt v. Brockett*, 20 Kan. 201; *Lawder v. Henderson*, 36 Kan. 754; *Wright v. Wright*, 58 Kan. 525; *Coon v. Railway Co.*, 75 Kan. 282.)

It is not necessary to determine whether prejudice resulted from the unwarranted latitude allowed in the cross-examination, as in any event the state of the evidence required the submission of the case to the jury. The description in the mortgage, as will be seen,

pointed out that the property intended to be mortgaged was wheat growing in a particular county in Oklahoma, on a particular quarter-section, definitely described; that the wheat was on a particular farm, known as Mrs. Tea's farm, located at a specified distance south and west of the city of Kiowa, and, further, that it was in the possession of the mortgagor. The suggestion that the clause "all this wheat on Mrs. Tea's farm" should be read as all the wheat on Mrs. Tea's farm, if justified, would leave no question as to the identity of the wheat; but in the absence of testimony tending to show that a mistake was made in expressing the intention of the parties that interpretation can not well be accepted. However, it may be that all the wheat on the farm was included in the mortgage. The mere fact that there may have been a little more or less than ninety acres does not necessarily destroy the validity of the mortgage. It is true that the mortgage stated that there were ninety acres of wheat, but such a statement is ordinarily only an approximation. Sometimes it is expressed as about so many acres, and at other times as a given number of acres, "more or less." According to the theory of the defendant no such mortgage could be made valid without an accurate survey of the ground on which the crop was grown. If it be assumed that this part of the description was in fact erroneous, it would not necessarily invalidate the mortgage. If other features of the description give third parties such information as will enable them by making reasonable inquiry to identify the mortgaged property, it is enough. (*Waggoner v. Oursler*, 54 Kan. 141; *Dendy v. Bank,* 76 Kan. 301; *Rudolph v. Commission Co.,* 76 Kan. 789.)

The testimony of Tea does not undertake to give the exact acreage of the wheat. To one inquiry he answered: "Well, I could not say exactly, but there was about, I should judge, about one hundred, or may be a little more, acres." In attempting to get at the num-

ber of acres in another way he was asked if Roberts broke out eighty-five acres of the new land, and his answer was: "He was supposed to." As to the number of acres of old land, he was asked how many acres of land were in cultivation before the lease was made, and he answered: "About twenty acres, I think." In reply to another inquiry as to the acreage he said: "Well, there was about—there was more than one hundred acres; I could not say positively, because the fences are not straight." This testimony indicates that the witness was making no more than an estimate of the wheat acreage; and, besides, the jury might not have believed his testimony. He was an interested party, who had taken the wheat and thus laid himself liable for its conversion in case the mortgage should be upheld. The jury were not required to believe his testimony, although there were no other witnesses on the question of acreage, and the weight of his testimony and whether the wheat could be identified were jury questions. This case is wholly unlike that of *Souders v. Voorhees,* 36 Kan. 138, where the property described was six hundred bushels of growing corn located on a tract of land on which more than one thousand bushels were growing. That case was disposed of on an agreed statement of facts which disclosed that no separation or identification was or could be made. Here the party was entitled to have tried by the jury whether it was possible to identify the mortgaged property. In *Dendy v. Bank,* 76 Kan. 301, it was said:

"The description which the mortgage gave of the cattle was defective. They were described as kept at a particular ranch, whereas they were in fact in another part of the county. Whether notwithstanding this partial misdescription the mortgage still gave sufficient information by which the cattle could with reasonable inquiry have been identified was a question for the determination of the jury." (Page 303.)

So, here, the jury might upon the testimony to which they gave credence have determined that the mortgaged property could be ascertained and identified. It was therefore error to sustain the demurrer to plaintiff's evidence.

The judgment is reversed and the cause remanded for further proceedings.